**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| **MODERN SPACE DESIGN & DECORATION (SHANGHAI) CO., LTD.,** <br><br> Plaintiff, <br><br> v. <br><br> **TIMOTHY MARK LYNCH,** <br><br> Defendant. | **Case No. 13 C 4329** <br><br> **Hon. Harry D. Leinenweber** |

**MEMORANDUM OPINION AND ORDER**

On June 11, 2013, Plaintiff Modern Space Design & Decoration (Shanghai) Co., Ltd. ("Modern Space Shanghai") filed this action seeking to enjoin its former employee, Defendant Timothy Mark Lynch ("Lynch"), from misappropriating company trade secret information and to secure the return of a laptop computer containing confidential materials, which it contends Lynch absconded with after the parties' employment relationship terminated. In response, Lynch filed a Counterclaim and Third-Party Complaint against Modern Space Shanghai and two of its affiliates, Modern Space HK, Ltd. ("Modern Space HK") and Modern Space Pacific Services ("Modern Space Pacific") (for ease of reference, the Court will refer to these three companies collectively as the "Modern Space Group"), asserting claims for breach of his employment contract, violation of the Illinois Sales Representatives Act, and

unjust enrichment. The Modern Space Group has moved to compel Lynch to arbitrate his claims pursuant to the terms of the arbitration provision contained within his Employment Agreement. For the reasons stated herein, the Court finds that Lynch's claims must be submitted to arbitration.

## I. BACKGROUND

The Modern Space Group is in the business of manufacturing and selling custom wood cabinets, metal racks, and other components used by retail store chains to display products to consumers. In 2011, Lynch entered into employment discussions with the principal of the Modern Space Group, Jonathan Dickenson ("Dickenson"). Those discussions proved fruitful and, in September, the Modern Space Group sent Lynch a letter offering him a position as Vice President of Global Business Development (the "Letter Agreement").

The Letter Agreement recited what were to be the basic terms of Lynch's employment, including his general responsibilities, base salary, bonus structure, health benefits, and annual leave. It further specified that Lynch would be hired for a contract term of three years, which was terminable on thirty days' notice and the payment of thirty days' base pay. The Letter Agreement concluded by stating that "[u]pon agreement of this basic framework," the parties would execute a separate, written employment contract at the Modern Space Group's offices in Shanghai, China.

Thereafter, on September 26, 2011, Lynch signed a document entitled "Labor Contract," which included an arbitration provision requiring the parties to settle by consultation "any dispute arising from the performance of th[e] Contract" and to submit any issue that could not be resolved by consultation to a local labor arbitration committee within sixty days of the date of the dispute. The contract also contained an integration clause, stating that:

> Any labor contract signed by both parties before this Contract[,] shall become valid automatically from the date of this Contract. If any other provisions of relevant agreements signed before this contact (including but not limited to the confidentiality agreement, training agreement, and non-competition agreement) are inconsistent with this contract, this contract shall prevail.

After working at the Modern Space Group for approximately a year and a half, Lynch was informed in March 2013 that his employment agreement was being terminated effective immediately. Thereafter, Dickenson proposed an alternative arrangement whereby Lynch would be retained in a diminished role and at a reduced salary. Lynch declined that offer.

In this suit, Lynch asserts that the Modern Space Group breached his employment agreement by failing to pay him salary and bonus earnings to which he alleges he was entitled under the terms of his contract. He seeks damages for those outstanding amounts as well as payment of the agreed-upon thirty day termination fee.

## II.  LEGAL STANDARD

The Federal Arbitration Act ("FAA") provides that an arbitration clause "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  Thus, the FAA obliges courts to stay proceedings and compel arbitration for any claim that falls within the ambit of a valid agreement to arbitrate.  *Van Tassell v. United Mktg. Grp., LLC,* 795 F.Supp.2d 770, 786 (N.D. Ill. 2011).  In assessing the scope and validity of an arbitration agreement, courts generally apply state-law contract principles.  *First Options of Chi., Inc. v. Kaplan,* 514 U.S. 938, 944 (1995).  However, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself [must be] resolved in favor of arbitration."  *Volt Information Sciences, Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.,* 489 U.S. 468, 476 (1989).

## III.  ANALYSIS

Lynch's primary argument against arbitration is that the Labor Contract is invalid because it was procured by fraud.  To that end, Lynch alleges that the Modern Space Group's human resources manager duped him into signing the Labor Contract – a document written entirely in Chinese – which he contends was presented to him without translation as being "paperwork" relating to his application for a Residence Visa in China.  As such, Lynch claims

- 4 -

that he was unaware that he was executing an employment contract, much less that he was consenting to the resolution of any claims by arbitration. (Decl. of Timothy Mark Lynch, sworn to on Jan. 13, 2014 ("Lynch Decl."), ¶¶ 31-36, ECF No. 16-1). Lynch insists that, had he known that the document was an employment contract, he would have asked for a translation and sought time to review the agreement with counsel. (*Id.* ¶ 37).

In *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* the Supreme Court held that, in determining the validity of an arbitration agreement, federal courts are not permitted to "consider claims of fraud in the inducement of the contract generally." *Prima Paint Corp. v. Flood & Conklin Mfg. Co.,* 388 U.S. 395, 404 (1967). Rather, "a challenge to the validity of the contract as a whole, and not specifically to the arbitration clause itself, must go to the arbitrator." *Buckeye Check Cashing, Inc. v. Cardegna,* 546 U.S. 440, 449 (2006). This is because the FAA does not condition the enforceability of a written arbitration provision upon the validity of the contract within which it is contained. *Rent-A-Ctr., W., Inc. v. Jackson,* 561 U.S. 63, 70 (2010). For that reason, "a party's challenge to another provision of the contract, or to the contract as a whole, does not prevent a court from enforcing a specific agreement to arbitrate." *Id.*

Lynch's argument that the Labor Contract was executed under false pretenses goes to the validity of the employment agreement as

a whole, rather than to the arbitration provision specifically. Accordingly, although Lynch may have a legitimate claim that the Labor Contract "should be nullified," (Def.'s Mem. in Opp. to Mot. to Compel ("Def.'s Opp. Mem.") at 9, ECF No. 19-1), his arguments must be referred to the arbitrator in the first instance. *Buckeye,* 546 U.S. at 444-45 (2006).

Lynch next asserts that the arbitration provision is unenforceable because its terms are substantively unconscionable. Specifically, Lynch complains that the arbitration clause restricts his ability to pursue his claims because it (1) reduces the ordinary 10-year limitations period allowed under Illinois law to a mere sixty days, and (2) requires him to arbitrate his claims in Shanghai.

As an initial matter, the Court must determine which substantive body of law governs the arbitration clause. Although the Labor Contract does not contain a choice of law provision, it would appear that Chinese law should control, since the agreement was executed and performed for the most part in China. Neither Lynch nor the Modern Space Group have addressed the issue, however; both appear content to have the case resolved under Illinois law. Accordingly, since neither side has provided the requisite written notice of intent to rely on foreign law, *see,* FED. R. CIV. P. 44.1, it is proper for the Court to apply Illinois law. *Auto-Owners Ins. Co. v. Websolv Computing, Inc.,* 580 F.3d 543, 547 (7th Cir. 2009)

("Courts do not worry about conflict of laws unless the parties disagree on which . . . law applies.") (quotation marks and citation omitted); *Nathan v. Morgan Stanley Renewable Dev. Fund, LLC,* No. 11 C 2231, 2012 WL 1886440, at *11 n.14 (N.D. Ill. May 22, 2012) ("[F]or choice of law to even be considered, one of the parties must actually raise and argue a potential conflict between the forum's law and the foreign entity's law.") (quotation marks, citation, and emphasis omitted).

Under Illinois law, a contract is substantively unconscionable when its terms are "inordinately one-sided in one party's favor." *Estate of Davis v. Wells Fargo Bank,* 633 F.3d 529, 535 (7th Cir. 2011) (citing *Razor v. Hyundai Motor Am.,* 854 N.E.2d 607, 622 (Ill. 2006)). Typical indicators of substantive unconscionability include an "overall imbalance in the obligations and rights imposed by the bargain" and "significant cost-price disparity." *Kinkel v. Cingular Wireless LLC,* 857 N.E.2d 250, 267 (Ill. 2006).

As a general rule, parties are permitted to fix "reasonable" limits on the time within which claims may be brought. *Vill. of Lake in the Hills v. Ill. Emcasco Ins. Co.,* 506 N.E.2d 681, 683 (Ill. App. Ct. 1987). In some cases (although the Court is unaware of any arising under Illinois law), courts have held that severely restrictive time limits can render an arbitration provision substantively unconscionable. *See, Alexander v. Anthony Int'l, L.P.,* 341 F.3d 256, 267 (3d Cir. 2003) (striking 30-day limitations

period in arbitration agreement as substantively unconscionable); *Gandee v. LDL Freedom Enters., Inc.*, 293 P.3d 1197, 1201 (Wash. 2013) (arbitration provision reducing available time period for raising claims to 30 days was substantively unconscionable where state law ordinarily afforded four years). Although the sixty-day limit imposed by the Labor Contract does seem rather short – indeed, it effectively would eliminate Lynch's ability to raise a claim at this juncture – the Modern Space Group has stipulated that it will not challenge as untimely any claim that Lynch seeks to bring under the arbitration clause, provided that he does so within 120 days after the date of this ruling. (Pl.'s Reply Mem. in Supp. of Mot. to Compel ("Pl.'s Reply") at 6, ECF No. 21). In light of that representation, Lynch cannot show that the arbitration agreement actually interferes with the effective vindication of his rights. Because a party seeking to avoid arbitration must demonstrate that at least a "likelihood of such interference" exists, *Booker v. Robert Half Intern., Inc.*, 413 F.3d 77, 81 (D.C. Cir. 2005), the Court finds no basis for invalidating the arbitration provision on the ground that the time limits imposed are unreasonable as a matter of law.

Nor does the Court find the requirement that Lynch arbitrate his disputes in Shanghai to be so onerous as to be unconscionable. Under Illinois law, forum-selection provisions are "*prima facie* valid" and must be honored unless the opposing party can

demonstrate that "enforcement will be so gravely difficult and inconvenient that [the opposing party] will for all practical purposes be deprived of [its] day in court." *Brandt v. MillerCoors, LLC,* 993 N.E.2d 116, 119 (Ill. App. Ct. 2013) (brackets in original, quotation marks omitted). In determining whether a forum-selection clause meets that standard, courts typically consider: "(1) the law governing the formation and construction of the contract; (2) residency of the parties; (3) location of execution/performance of the contract; (4) location of the parties and witnesses; (5) the inconvenience to the parties of any particular location; and (6) whether the parties bargained for the clause." *Id.*

The first four of these factors plainly weigh in favor of submitting Lynch's claims to arbitration in Shanghai. At the outset, an arbitrator in Shanghai likely would apply Chinese law in addressing Lynch's breach of contract claims. Although, as discussed above, the Labor Contract contains no express choice of law provision regarding the resolution of disputes arising under the agreement, the contract does indicate that the terms of Lynch's employment are to be governed generally "[i]n accordance with the Labor Law of the People's Republic of China, Regulations of Shanghai Municipality on Labor Contract, [and other] relevant laws and regulations and company rules." Accordingly, Chinese law would appear to control any issues concerning the formation and

construction of the Labor Contract. Second, as for the residency of the parties, the Modern Space Group is headquartered in China and, although Lynch now resides in the United States, he lived in Shanghai for a majority of the time that he was employed with the Modern Space Group. (*See,* Lynch Decl. ¶¶ 28-30, 41). It is not unreasonable to require arbitration in the place where both parties resided when the contract was performed. Third, the Labor Contract was executed and performed in substantial part in Shanghai. Thus, there is an obvious nexus between Lynch's claims, which arise out of his employment, and the arbitral forum mandated under the Labor Contract. Fourth, because the Modern Space Group and all of the witnesses in this case except for Lynch are based in China, the location of the parties and witnesses augurs in favor of arbitration in Shanghai.

The remaining two factors are neutral. With respect to the fifth factor, consideration of the convenience of the parties does not weigh in favor of any particular forum, since it would be equally inconvenient for the Modern Space Group to have to arbitrate in the United States as it would be for Lynch to arbitrate in China. Finally, as for the sixth factor, the only argument Lynch has advanced that would suggest that he did not have an opportunity to bargain for the forum-selection clause is his allegation that the Labor Contract was induced by fraud. As the

Court has explained already, however, that is an issue for the arbitrator to resolve.

On balance, Lynch has not shown that arbitrating his case in Shanghai would impose a hardship so substantial that it would effectively deprive him of a meaningful opportunity to pursue his claims. *See, Brandt,* 993 N.E.2d at 119. Although Lynch speculates that such a requirement would visit upon him "a significant and likely insurmountable financial burden," (Lynch Decl. ¶ 46), he offers no evidence in support of that assertion. A party that seeks to avoid an arbitration agreement on the ground that arbitration would be unreasonably expensive must at least provide "some individualized evidence" showing a likelihood that he will "face prohibitive costs in the arbitration at issue and that [he] is financially incapable of meeting those costs." *Livingston v. Assocs. Fin., Inc.,* 339 F.3d 553, 557 (7th Cir. 2003). In the absence of any evidence that this is the case here, the Court finds no basis for invalidating the arbitration provision on unconscionability grounds.

Lynch next contends that Modern Space HK and Modern Space Pacific are not entitled to invoke arbitration because only Modern Space Shanghai was listed as a party to the Labor Contract. Although it is true that arbitration agreements generally are enforceable only among signatories, "[a] non-signatory to an agreement to arbitrate can compel arbitration when a signatory's

claims are grounded in or intertwined with claims under the agreement that subjects the signatory to arbitration." *Penn. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n,* 713 F.Supp.2d 734, 744 (N.D. Ill. 2010); *see also, Paragon Micro, Inc. v. Bundy,* --- F.Supp.2d ---, 2014 WL 2441969, at *6 (N.D. Ill. May 28, 2014); *Levin v. NC12, Inc.,* No. 10 C 1606, 2011 WL 2582138, at *5-6 (N.D. Ill. June 29, 2011); *Hoffman v. Deloitte & Touche, LLP,* 143 F.Supp.2d 995, 1004-5 (N.D. Ill. 2001). Because Lynch's claims against Modern Space HK and Modern Space Pacific are identical to the claims he asserts against Modern Space Shanghai, the Court finds that all three entities may enforce the arbitration provision in this case.

Lynch also contends that arbitration would be improper because his claims fall outside the scope of the Labor Contract's arbitration clause. It is difficult to see how that could be the case, however, since the arbitration provision applies to "any dispute[s] arising from the performance of [the Labor] Contract" and Lynch's claims relate directly to his employment at the Modern Space Group. While Lynch argues that his claims actually arise out of the Letter Agreement rather than the Labor Contract, the distinction is irrelevant because the Labor Contract contains an integration clause that subsumes the terms of the Letter Agreement.

Finally, Lynch contends that the Modern Space Group waived its right to invoke arbitration by initiating this action in the first

place. Generally, "an election to proceed before a nonarbitral tribunal for the resolution of a contractual dispute is a presumptive waiver of the right to arbitrate." *Cabinetree of Wis., Inc. v. Kraftmaid Cabinetry, Inc.,* 50 F.3d 388, 390 (7th Cir. 1995). That presumption, however, may be rebutted in a "variety of circumstances." *Id.* The controlling question is whether "the party against whom the waiver is to be enforced has acted inconsistently with the right to arbitrate." *Ernst & Young, LLP v. Baker O'Neal Holdings, Inc.,* 304 F.3d 753, 756 (7th Cir. 2002).

The Modern Space Group's decision to bring an action in this Court was not inconsistent with its right to arbitrate under the Labor Contract because its claims do not arise out of the terms of Lynch's employment agreement and are not subject to the arbitration provision. Rather, its claims stem from misconduct that took place at or after Lynch's termination. Indeed, by seeking to enjoin Lynch from misappropriating company trade secrets and to secure the return of a stolen laptop, the Modern Space Group does not purport to enforce any rights under the Labor Contract: it merely pursues relief under Illinois statutory and common law. Once Lynch countered with claims premised entirely upon an alleged breach of his employment agreement, the Modern Space Group promptly moved to compel arbitration. In these circumstances, the Court finds that the Modern Space Group did not waive its right to invoke arbitration under the Labor Contract.

Having determined that Lynch is required to arbitrate his claims against the Modern Space Group, the ordinary course would be to compel arbitration and stay the case. However, the Seventh Circuit has held that a district court cannot order arbitration in a forum outside of the district in which it sits, *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer,* 49 F.3d 323, 327 (7th Cir. 1995), and the arbitration provision contained within the Labor Contract mandates that arbitration take place in Shanghai. In these circumstances, the Court is not permitted to compel arbitration but, instead, must dismiss Lynch's claims. *See, Continental Cas. Co. v. Am. Nat. Ins. Co.,* 417 F.3d 727, 735 (7th Cir. 2005).

## IV. CONCLUSION

For the reasons stated herein, the Court finds that Lynch's claims are subject to arbitration in Shanghai under the terms of the Labor Contract. However, because the Court cannot order arbitration outside the Northern District of Illinois, the Modern Space Group's Motion to Compel, (ECF No. 11), is denied. Lynch's claims are dismissed without prejudice.

**IT IS SO ORDERED.**

     Harry D. Leinenweber, Judge
     United States District Court

Date:9/29/2014